James F. **MILES** and Theresa B. Miles, Plaintiffs,

v.

**GREAT NORTHERN INSURANCE COMPANY, Defendant.**

**Civil Action No. 07–11722–NMG.**

United States District Court, D. Massachusetts.

Sept. 14, 2009.

---

Roger J. Brunelle, Ralph F. Sbrogna, Fletcher, Tilton & Whipple, Worcester, MA, for Plaintiffs.

Mark W. Corner, Riemer & Braunstein LLP, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this dispute between an insurance company and two of its insureds, the parties have filed cross-motions for partial summary judgment.

### I. *Background*

#### A. Facts

The plaintiffs in this case, Theresa B. Miles ("Mrs. Miles") and James F. Miles ("Mr. Miles"), are the named insureds under a fire insurance policy ("the Policy") issued by the defendant, Great Northern Insurance Company ("Great Northern"). The Policy covers the plaintiffs' residence located in Rehobeth, Massachusetts ("the Property"), which was substantially damaged by a fire in the early morning hours of October 17, 2004.

The day after the fire, the plaintiffs filed a claim with Great Northern which subsequently began an investigation. Charles McIntyre ("McIntyre"), Great Northern's chief investigator, spoke with Mr. Miles who stated that he was the last person to leave the house prior to the fire. He informed McIntyre that he had had difficulty setting the alarm that evening. Mr. Miles also reported that he had left the house to join his wife in New Jersey and had mistakenly entered the New Jersey Turnpike through an "EZ Pass" lane (even though his car did not have an EZ Pass electronic tag) such that he obtained a toll receipt only upon exiting the highway. He claimed that he was unable to locate that receipt. Furthermore, Mr. Miles explained that he was in bankruptcy due to a one million dollar judgment against him which he could not satisfy and that his wife had no gainful employment.

The local authorities investigated the fire and reported an initial finding that it was intentionally set. The fire appeared to have originated inside the house but the intrusion alarm securing the house had not been triggered and there was no sign of forced entry. Mr. Miles remained a "person of interest" throughout the investigation but ultimately no criminal prosecution was ever initiated against him.

The Policy provides coverage for fire loss, even in the event of arson, so long as the insureds did not cause the fire. In the event of a loss, the insureds must submit to an examination under oath and provide a "signed proof of loss" with supporting documentation within 60 days after it is requested.

Two months after the fire, Mr. Miles submitted to an examination under oath at which he repeated what he had previously told McIntyre. At that examination Mr. Miles also testified that before the fire several people had threatened to "destroy" him but he refused to provide the names of those people unless Great Northern agreed not to disseminate that information to others beyond what was absolutely necessary (which it did not agree to do).

In January, 2005, Mrs. Miles appeared for an examination under oath at which she testified that she had no regular income and was liquidating some assets to support herself. She also produced a record from Protection One, Inc. ("Protection One"), the company that provided fire and security alarm services to the Property, showing the alarm activity for October, 2004. At that time, Mr. Miles, who is an attorney, claimed to be representing her and forbade her from answering the majority of Great Northern's questions.

Prior to her examination, Great Northern had asked Mrs. Miles to sign an authorization form so that Protection One could release its records for the Property's alarm system activity. It had also requested that she produce copies of her

income tax returns and those of her husband. Great Northern repeated those requests in April, June and October of 2005 but Mrs. Miles failed to comply with the requests. In addition, in December, 2004, Great Northern requested that the plaintiffs submit a sworn proof of loss within 60 days. Five months later, they purported to submit a proof of loss which was not executed under oath and which identified the amount of the entire loss only as "to be determined."

On October 12, 2005, Great Northern sent Mr. and Mrs. Miles a letter informing them that their claim had been denied. The letter stated that Great Northern had been unable to complete its investigation because the plaintiffs had provided incomplete or evasive answers at their examinations, refused to provide certain documents that had been requested (including tax returns, highway toll receipts and an authorization for alarm records). The Miles were also informed that they failed to provide timely and proper proof of loss.

In a letter dated October 6, 2006, Mr. and Mrs. Miles sent a signed authorization for their alarm records to Great Northern and stated that they were willing to provide copies of their tax returns provided that Great Northern would sign a confidentiality agreement (despite the fact that Great Northern normally operates according to its own privacy policies). Although Great Northern agreed to sign the confidentiality agreement a month later, it did not actually sign it until May, 2007. On May 16, 2007, Mr. and Mrs. Miles mailed copies of their tax returns to Great Northern.

In October, 2006, the plaintiffs made a written demand to have three "referees" establish the amount of loss pursuant to M.G.L. c. 175, § 100. On May 16, 2007, the referees determined that the replacement cost value of the house damaged in the fire was $890,567, the actual cash value was $685,732 and the personal property loss was $713,159. Great Northern had reimbursed the plaintiffs for living expenses in the amount of $250,000 and had paid their mortgagees over $800,000 before denying the plaintiffs' claim but it refused to pay any additional amounts.

## B. Procedural History

On July 30, 2007, the plaintiffs filed suit against Great Northern in the Massachusetts Superior Court for Suffolk County. Each plaintiff individually asserted four claims against the defendant: 1) breach of contract (Counts I and II), 2) unfair claims settlement practices in violation of the Unfair Methods and Deceptive Acts and Practices in the Business of Insurance Act, M.G.L. c. 176D, § 3(9), for a) denying coverage (Counts III and IV) and b) failing to pay the amount of losses assessed by the referees' decision (Counts V and VI) and c) breach of the covenant of good faith and fair dealing (Counts VII and VIII).

Great Northern later removed the suit to this Court on diversity grounds. Shortly thereafter, it filed an answer to the complaint asserting counterclaims for unjust enrichment and breach of contract for failure to reimburse Great Northern for the amounts advanced to the plaintiffs and paid to the mortgagees of the Property before denial of the claim.

On March 13, 2009, Mrs. Miles filed a motion for partial summary judgment with respect to Counts I and V of the complaint and Mr. Miles filed a similar motion with respect to Counts II and VI. About one month later, Great Northern opposed those motions and filed its own motion for partial summary judgment with respect to Counts III through VIII of the complaint. The plaintiffs have opposed that motion.

On May 15, 2009, the plaintiffs "waived" (i.e., voluntarily dismissed) Counts III, IV, VII and VIII. Accordingly, Great Northern's motion for summary judgment is, with respect to those counts, moot. On the same day, the plaintiffs filed a motion to strike paragraphs 8 through 12 in an affidavit submitted by McIntyre in support of Great Northern's motion for partial summary judgment ("the Affidavit"). Great Northern has opposed that motion.

## II. *Legal Analysis*

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-mov-

ing party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Application

#### 1. Breach of Contract (Counts I and II)

█ When an insurer investigates a claim of loss, the insured has a duty to cooperate by submitting to an examination under oath and producing documents relevant to the claimed loss. *Romano v. Arbella Mut. Ins. Co.*, 429 F.Supp.2d 202, 208 (D.Mass.2006). The insurer may not deny the claim for failure to cooperate, however, unless it makes "an affirmative showing of actual prejudice resulting from the failure." *Id.* (internal quotation marks and citation omitted).

The plaintiffs admit that they initially breached their duty to cooperate owed to Great Northern but argue that they are entitled to summary judgment on Counts I and II of their complaint because they have cured that breach and Great Northern has failed to pay their claim. They assert that although Great Northern was initially justified in denying their claim, they maintained a right to cure their breach which they exercised by providing the documents Great Northern had requested, thus enabling it to investigate the loss and make a final determination of coverage. They assert that Great Northern understood its duty to adjudicate the claim even after issuing the claim denial letter as demonstrated by the fact that it obtained records from Protection One and executed the confidentiality agreement.

The plaintiffs acknowledge that there is no controlling Massachusetts caselaw indicating whether an insured who has breached a duty of cooperation can later cure that breach and thereby obtain the proceeds of his or her insurance policy. They note that, in *Rymsha v. Trust Ins. Co.*, 51 Mass.App.Ct. 414, 746 N.E.2d 561, 564–65 (2001), the Massachusetts Appeals Court refused to recognize a right to cure a breach of the duty to cooperate after a Massachusetts Superior Court had determined that the insurer's request for information relevant to a claim of loss was reasonable. Mr. and Mrs. Miles distinguish that case, however, by pointing out that the court in *Rymsha* noted that

> [i]n the circumstances of this case, we do not see why [the insured] should be entitled to a judicial test-run on the issue of the reasonableness of Trust's requests for information.

746 N.E.2d at 564–65. The plaintiffs contend that they had, conversely, already complied with Great Northern's requests before any court ruling and do not seek to challenge the reasonableness of those requests.

In addition, the plaintiffs argue that Great Northern cannot make an affirmative showing of actual prejudice resulting from their late cooperation. They suggest that insurers generally request copies of tax returns to determine whether the insureds had any financial motive to cause loss to themselves and that they informed Great Northern of their financial distress at the beginning of its investigation, well prior to producing the documents to verify that fact. The plaintiffs also suggest that Great Northern was similarly aware of all the relevant information contained in the Protection One records.

Great Northern responds that it suffered prejudice as a result of the plaintiffs' failure to produce the requested documents because it was unable to complete its investigation. It alleges that the plaintiffs' cooperation, which occurred two years after the fire and over one year after the denial of their claim, produced potentially probative evidence of which it was not aware "while the investigative trail was still fresh." Moreover, Great Northern claims that the recently produced evidence was contradictory to that which was provided by Mr. Miles during his examination under oath.

In rebuttal, the plaintiffs claim that, even if Great Northern's assertions are true, it retains the opportunity to complete its investigation into whether Mr. Miles intentionally caused the fire. Such a dispute is fact-intensive and better left to a jury's consideration. Entry of summary judgment with respect to Counts I and II is, therefore, unwarranted.

■ Finally, the plaintiffs assert that, in the event that the Court determines that Mr. Miles's breach of his duty to cooperate cannot be cured or excused, his breach should not be imputed to Mrs. Miles because the Policy contains a severability clause. In support of that argument, the plaintiffs cite to *Worcester Mut. Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158, 161 (1986), in which a homeowner insurance provision excluding damage arising out of the use of a motor vehicle owned or operated by "any insured" was interpreted to exclude coverage only to the insured who actually owned or operated the motor vehicle, and not to other insureds, due to the inclusion of a severability provision in the policy. The court recognized that even though its interpretation rendered the word "any" superfluous, a contrary interpretation would render the severability provision meaningless. *Id.*

Thus, by analogy, the plaintiffs contend that the severability clause contained in

the Policy requires the Court to disregard the words "any covered person" in the policy provision stating that

[the] policy is void if you or any covered person has intentionally concealed or misrepresented any material fact relating to this policy.

As Great Northern points out, however, the express language of that provision unambiguously bars coverage for an innocent co-insured spouse through the inclusion of the term "any covered person" and, accordingly, it will be so construed. *See Yerardi v. Pac. Indem. Co.*, 436 F.Supp.2d 223, 249 (D.Mass.2006) (precluding coverage for an innocent insured, despite a severability clause, where loss was allegedly caused and concealed by her husband, another insured, and the policy excluded coverage for malfeasance "by [the insured] or a family member" as well as concealment by "any covered person"). Thus, Mr. Miles's alleged breach will be imputed to his wife.

The parties also dispute the amount of damages for which Great Northern would be liable on Counts I and II. Because the Court has already determined that summary judgment for breach of contract is unwarranted, it declines to address that dispute.

### 2. Violation of M.G.L. c. 176D, § 3(9) (Counts V and VI)

Although M.G.L. c. 176D, § 3(9) provides no private cause of action, relief for a violation of that statute is available under M.G.L. c. 93A, § 9. *Yerardi*, 436 F.Supp.2d at 242. M.G.L. c. 176D, § 3(9) prohibits an insurer from engaging in unfair claim settlement practices such as

(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear . . . [and]

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

The plaintiffs concede that their arguments with respect to summary judgment on Counts V and VI are relevant only if the Court allows their motion for summary judgment with respect to Counts I and II. Because the Court declines to allow that motion, the plaintiffs' motion with respect to Counts V and VI will also be denied.

In support of its cross-motion for summary judgment with respect to Counts V and VI, Great Northern argues that the plaintiffs' alleged "cure" of the breach of their duty of cooperation after their claim was denied was "too little too late" and did not require Great Northern to pay the amount of their loss as determined by the referees. They suggest that the referee proceeding did not establish liability under the Policy but rather only the amount of loss.

Great Northern had a reasonable and good faith belief that it 1) could deny the plaintiffs' claim after they breached their duty to cooperate and 2) did not have to reconsider its denial after the plaintiffs' cured their breach because, as the plaintiffs themselves recognize, there is no Massachusetts law mandating such action. Even if Great Northern's actions are "ultimately held to be based on a misinterpretation of the law," those actions would not rise to the level of a violation of M.G.L. c. 176D, § 3(9). *See Romano*, 429 F.Supp.2d at 207 ("Liability under c. 176D and 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous.") (internal quotation marks and citations omitted). Accordingly, judgment in

favor of Great Northern will be entered with respect to Counts V and VI.

### C. Motion to Strike

■ The plaintiffs have filed a motion to strike portions of McIntyre's Affidavit pursuant to Fed.R.Civ.P. 56(e)(1) which requires that affidavits supporting a motion for summary judgment must "be made on personal knowledge [and] set out facts that would be admissible in evidence." Under that rule, inadmissible hearsay cannot be considered on a motion for summary judgment. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990).

The plaintiffs argue that the disputed paragraphs in the Affidavit contain statements made by a Protection One representative to McIntyre. They assert that, because such statements constitute inadmissible hearsay, they should be stricken and disregarded. *See Perez v. Volvo Car Corp.*, 247 F.3d 303, 314–15 (1st Cir.2001) (allegedly deficient affidavit may be addressed by a motion to strike).

Great Northern responds that the disputed statements are not hearsay because they are not being offered to prove the truth of the matters asserted. *C.f.* Fed. R.Evid. 801. It contends that, in fact, the statements show 1) the steps McIntyre took to determine whether the fire at the Property was intentionally set, thus demonstrating Great Northern's good faith efforts to conduct an investigation, and 2) the information that would have been available if the plaintiffs had cooperated in a timely fashion.

■ With respect to its first contention, Great Northern does not need to include the contents of the statements made by the Protection One representative to demonstrate the steps taken during the course of its investigation of the plaintiffs' loss. Querying the Protection One representa-

tive is a "step" in and of itself. Therefore, that contention is unpersuasive.

■ With respect to Great Northern's second contention, use of the representative's statements to demonstrate that different information would have been available to Great Northern had the plaintiffs cooperated necessitates reliance on those statements for the truth of the matters asserted. Indeed, Great Northern explicitly relies on the truth of the matters asserted in those statements to demonstrate that

[Protection One's alarm] equipment was functional, and could have been manually disabled at [the Property] without a record being created at Protection One.

Thus, the defendant's second contention is equally unavailing.

Accordingly, the plaintiffs' motion to strike will, with respect to paragraphs 8 through 11 (which contain the statements of the Protection One representative) be allowed. It will be denied, however, with respect to paragraph 12 which does not contain any out-of-court statements (i.e., hearsay) but rather only McIntyre's opinion that the information provided by the Protection One representative was different from that provided by Mr. Miles during his examination under oath.

It should be noted that, even though the motion to strike will be allowed in large part, Great Northern's argument with respect to prejudice from lack of cooperation will stand, despite the plaintiffs' contention to the contrary. As described above, proof of prejudice may be inferred from other evidence.

### ORDER

In accordance with the foregoing,

1) plaintiffs' motions for partial summary judgment (Docket Nos. 19 and 20) are **DENIED**;

2) defendant's motion for partial summary judgment (Docket No. 27) is,

a) with respect to Counts I and II, **DENIED,**

b) with respect to Counts III, IV, VII and VIII, **DENIED AS MOOT** and,

c) with respect to Counts V and VI, **ALLOWED;** and

3) plaintiffs' motion to strike (Docket No. 33) is,

a) with respect to paragraphs 8 through 11 of the affidavit of Charles H. McIntyre (Docket No. 30), **ALLOWED** but,

b) with respect to paragraph 12 of that affidavit, **DENIED.**

**So ordered.**